FRED A. HARFORD vs. RANSOM C. TAYLOR.

Worcester.    November 11, 1901. — May 19, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Joint Tenants and Tenants in Common.    Ouster,* Of cotenant.   *Landlord and Tenant,* Water rates.   *Damages,* For ouster by cotenant.

If one of two cotenants under a lease being in sole occupation of the premises by permission of the other surrenders possession to the landlord, who puts a new tenant in exclusive possession of the premises, and the recently occupying cotenant delivers to the landlord the lessees' duplicate original of the lease, this is an ouster of the absent cotenant, who can maintain an action in the nature of *quare clausum fregit* against the landlord who became his cotenant by the surrender.

Where there are several tenants in a building and only one water meter, and the lessor has made no attempt to apportion the water rates which his tenants are to pay under their leases, he cannot enter and terminate their leases for non-payment of water rates.

If one of two cotenants under a lease surrenders his interest to the landlord, who puts a new tenant in exclusive possession of the premises ousting the other cotenant, in an action by the ousted cotenant in the nature of *quare clausum fregit* against the landlord, the defendant has a right to an instruction that the jury in assessing damages may take into consideration the fact that after the surrender the plaintiff was a cotenant with the defendant, the interest of his former cotenant having been merged in the fee, and if the value of such an undivided half interest is less than half the value of the whole, that is a fact which the defendant has a right to have the jury consider.

TORT in the nature of trespass *quare clausum fregit.* Writ dated December 15, 1899.

At the trial in the Superior Court before *Gaskill,* J., the judge ruled that the plaintiff was entitled to recover at least nominal damages, and left the case to the jury upon the question of damages. The jury returned a verdict for the plaintiff assessing the damages in the sum of $235; and the defendant alleged exceptions.

Six rulings were requested by the defendant and refused by the judge. The substance of the first five is stated by the court. The sixth ruling, for the refusal of which the defendant's exceptions are now sustained, was as follows: "If the plaintiff had any rights in the premises after the surrender by Brown, it was

only as tenant in common with the defendant, and this fact should be taken into consideration by the jury in assessing damages."

*C. T. Tatman,* for the defendant.

*B. W. Potter,* for the plaintiff.

LORING, J.   On June 13, 1896, the defendant let the premises in question to the plaintiff and one Brown, for a term of years, beginning on the first day of September following.   When the lease was executed the defendant was building a store on the premises, in which Brown and the plaintiff intended to carry on the business of apothecaries as partners.   But before September 1, when the term was to begin, " they decided that they would not enter into partnership nor do business together on the premises but that Brown should occupy the store and carry on the business therein on his own account."   It further appeared " that the plaintiff never actually occupied the premises, but told Brown to go ahead with the store and that Brown carried on the store as sole owner thereof and occupied it alone until he (Brown) sold out to one Elkind and gave up possession on June 7, 1899."   It also appeared that when this arrangement was made between Brown and the plaintiff, the plaintiff saw the defendant's sons, who were his agents, " and that it was orally agreed between them and him that in case one month's rent should overrun they should notify him within ten days ; that the plaintiff told them that he was perfectly willing to keep his name on the lease and that at any time he would be responsible for the rent ; that as quick as Brown's death or failure or anything of that sort should occur to violate the lease as far as he was concerned, plaintiff was second ; that they were perfectly willing plaintiff should do so ; that he had spoken to the defendant's sons several times while Brown was in occupation of the premises under the lease, saying that he desired to have them when Brown got through."

As already stated, Brown entered on the demised premises at the beginning of the term and carried on business there as an apothecary for two years and nine months, when, without giving notice to the plaintiff he sold his stock in trade and store fixtures to one Elkind.   When he sold to Elkind, Brown, Elkind and the defendant's sons, his agents, went upon the premises ; Brown

then " voluntarily " surrendered possession to the defendant, the defendant put Elkind in possession, and Brown delivered the stock in trade and fixtures to him. It also appeared that Brown at or about this time delivered to the defendant the lessee's duplicate original of the lease. Elkind has since remained in possession as tenant at will of the defendant.

This took place on June 7, 1899, but it did not come to the knowledge of the plaintiff " until a week or so after." On June 16, 1899, the plaintiff notified the defendant in writing that he claimed his " rights as one of the lessees named in " the lease, and forbade the defendant " to cancel or surrender said lease to Mr. Wm. A. Brown or any one else." In the following fall, the plaintiff tendered the defendant $17.63 as rent which had not been paid by Brown, but the defendant " refused to give him possession of the premises, saying that Mr. Elkind had the store," and on December 15, 1899, the plaintiff brought this action.

The rent reserved in the lease to Brown and the plaintiff was $850 a year, payable in monthly instalments. Since Elkind has been in possession he has paid the same rent; there was evidence " that the rental value of the premises was $1,200 per year."

While Brown was in occupation of the store he paid all the rent paid, and " receipts were given to Brown in the name of Brown and Harford." On June 7, when Brown surrendered possession, the rent due since April 30 was unpaid. In addition to the rent of $850 a year, it was provided in the lease that the lessee should pay " the taxes levied for the use of the city water." The lease contained a clause authorizing the lessor to enter and terminate the lease on non-performance of any of its covenants. The rent for the month of May was paid by Brown on June 8, 1899, the day after Elkind was put in possession; but the rent from June 1 to June 7, 1899, has not been paid by any one; as already stated, " in the fall of 1899 " the plaintiff " tendered the defendant the sum of $17.63 as rent . . . from June 1 to June 7, 1899. . . . The bills for city water from the beginning of the term had never been paid by any one, but had been presented to Brown on the day of the sale to Elkind but never before by witness," nor, so far as appeared, by any one

else. There were other tenants in the building and but one water meter, and "it was impossible to tell how much water had been used by Brown except by estimation."

1. The defendant, in the first and second rulings requested by him, contended that unless there was a physical ouster or an eviction, the plaintiff's remedy is an action on the covenant for quiet enjoyment, and in his third request contended that "the non-occupation by Harford at any time, together with the actual surrender of the written lease" and of possession "constitute a surrender by operation of law."

It is settled that if one of two cotenants in possession ousts the other, he may maintain an action of trespass *quare clausum fregit; Silloway* v. *Brown,* 12 Allen, 30; *Bennett* v. *Clemence,* 6 Allen, 10, 18; *Byam* v. *Bickford,* 140 Mass. 31, 34; and the act of the defendant in putting Elkind in possession of the premises as sole tenant was an ouster within this rule.

The only question of difficulty in this case is whether the plaintiff was in legal contemplation in possession when the defendant gave possession to Elkind.

Under the arrangement by which Brown entered into the sole occupation of the store, the plaintiff's rights as a cotenant under the lease were to be kept alive. Unless there is something to the contrary, possession follows title, and Brown's possession was the possession of the plaintiff. The arrangement gave Brown the exclusive occupation of the premises so long as it lasted, but that did not in our opinion displace the legal possession which ensued from the continued existence of the plaintiff's title as cotenant under the lease. The actual surrender of the written lease by Brown did not affect the plaintiff's rights as one of the two to whom the premises were let. Brown's surrender of the possession of the premises was part of the transaction by which Elkind was put in possession and therefore the plaintiff was in possession when the defendant undertook to and did put Elkind in exclusive possession of the premises in which the plaintiff was the tenant of an undivided half interest. For these reasons, we are of opinion that the presiding judge was right in refusing to give the first, second and third rulings asked for.

2. In his fourth and fifth rulings the defendant contended that if the lessee was in arrears for water or for rent, it would

entitle the plaintiff to take possession rightfully without notice or demand.

Where, as in this case, there are several tenants and one meter, and no attempt has been made by the lessor to apportion the bill for water for the whole building, he cannot enter and terminate the lease for non-payment of water rates. The cases as to the apportionment of water rates in such a case are collected in *Stimson* v. *Crosby*, 180 Mass. 296.

As to the non-payment of rent, it is stated in the bill of exceptions that "Brown voluntarily gave up possession of the premises to the defendant," and after Elkind was put in possession Brown paid the rent for the month of May; the evidence did not warrant a finding that the defendant in fact entered for breach of covenant.

3. But we are of opinion that the sixth ruling requested by the defendant should have been given. Brown had the right to surrender his title as owner of one half of the term under the lease in question. The oral agreement by which Brown and the defendant agreed that the plaintiff should have the whole when he, Brown, "got through," did not enlarge the plaintiff's title. On Brown's surrendering to the defendant, all the right or title that the plaintiff had was that of a cotenant of an undivided half, the other undivided half interest having become merged in the fee by Brown's surrender. If the value of an undivided half interest was less than half the value of the whole, that fact was a fact which the defendant had the right to have the jury consider in assessing damages. As the presiding judge refused to submit that question to them, there must be a new trial upon the question of damages.

*So ordered.*